OPINION OF THE COURT
Jack M. Battaglia, J.
Plaintiff, Tanmar Service Corp., is seeking an award for prop *764 erty damage in the amount of $3,539.60, claimed to be the reasonable cost of repairs to its 1998 model Ford Crown Victoria four-door sedan. Plaintiffs vehicle was damaged on May 9, 1999, when it collided with a Nissan Sentra vehicle at the intersection of Walker and Centre Streets in Manhattan. At the time, plaintiffs vehicle was being driven by David Daniel, who leased the vehicle from the plaintiff for use as a taxicab. The Nissan Sentra vehicle was owned by defendant Judy K. Yuen, and at the time of the collision was being driven by defendant Hoiming Li.
The case was tried to the court without a jury on January 18, 2001. Both plaintiff and defendants appeared by counsel. Plaintiff presented two witnesses: Mr. Daniel and a representative of 55 Stan Operating Corp., an automobile repair facility. Defendants presented no witnesses. Defendants’ motion for a continuance, made at the conclusion of the plaintiffs evidence, was denied by the court. I reserved decision at the conclusion of the trial, and this decision after trial constitutes my findings of fact and conclusions of law on plaintiffs claim.
Mr. Daniel, plaintiffs driver, testified that he was traveling on Walker Street with a green light when he entered the intersection with Centre Street, and that while in the intersection his vehicle collided with the vehicle being driven by defendant driver, Mr. Li. There was no testimony or other evidence to contradict Mr. Daniel’s account of the collision. “The driver who has a green light has the right to assume that the light is red for cross traffic and that other drivers will stop for the red light.” (PJI3d 2:79, citing Shea v Judson, 283 NY 393 [1940].) I find it more likely than not that defendant Li failed to exercise reasonable care at the time and place of the collision, and that such failure was a substantial factor in causing the collision.
On the other hand, “even with a green light * * * a driver must exercise reasonable care to avoid a collision with another vehicle in the intersection.” (Redcross v State of New York, 241 AD2d 787, 791 [3d Dept 1997].) “Thus, if the driver saw or should have seen another vehicle in the intersection or so near the intersection that a collision was likely to occur, the driver was required to exercise reasonable care to avoid the collision.” (PJI3d 2:79.) Mr. Daniel testified that the front portion of the plaintiffs vehicle collided with the rear side portion of the defendants’ vehicle, allowing the inference that defendants’ vehicle had traveled a fair distance into the intersection before the collision. The repair estimate that plaintiff introduced on *765 damages (see discussion below) corroborates Mr. Daniel’s testimony as to the location of the damage to plaintiffs vehicle. There was no evidence other than Mr. Daniel’s testimony as to the location of the damage to defendants’ vehicle. I find, based upon plaintiffs own evidence as to the location of the two vehicles at impact, as well as Mr. Daniel’s testimony, that he did not see defendants’ vehicle until impact, that it is more likely than not that plaintiffs driver failed to exercise reasonable care to avoid the collision, and that such failure was a substantial factor in causing the collision.
Comparing the fault of the defendant driver and the fault of plaintiffs driver, I find that defendant driver was 80% at fault and that plaintiffs driver was 20% at fault. I have based my apportionment on my review of all of the relevant evidence, noting that defendants presented no testimony or other evidence as to liability, and placing weight on the high probability of danger and serious injury occasioned by a failure to honor a red light.
“[Generally damage to personal property is measured by the difference between the market value of the property immediately before and immediately after the harm was inflicted * * * And when the property damaged is an automobile, damages may also be established by showing the reasonable cost of repairs (see, e.g., CPLR 4533-a), so long as that cost is less than the diminution in market value resulting from the injury and the repairs do not exceed the value of the automobile as it was prior to the injury.” (Schwartz v Crozier, 169 AD2d 1003, 1004 [3d Dept 1991].) “[T]he plaintiff need only present evidence as to one measure of damages, and that measure will be used when neither party presents evidence going to the other measure.” (Jenkins v Etlinger, 55 NY2d 35, 39 [1982].) In other words, defendant has the burden of proving that the lesser amount will adequately compensate the plaintiff. (1 NY PJI3d 1120, citing Jenkins v Etlinger, supra.)
Here, neither party presented any evidence going to the diminution in value measure of damages. Rather, plaintiff sought to establish damages based upon the reasonable cost of repairs. Plaintiffs proof of the reasonable cost of repairs consisted solely of a “repair estimate” (see bill of particulars 5) on the letterhead of 55 Stan Operating Corp. in the total amount, inclusive of sales tax, of $3,539.60, i.e., the amount of plaintiffs claim. (See endorsed complaint.) The repair estimate shows plaintiffs name and the date of the accident and describes plaintiffs vehicle. Under printed headings “items,” “parts,” *766 “labor,” and “paint,” the document describes parts of the vehicle and lists dollar amounts related to the repairs of those parts. Under printed headings “replaced” and “repaired,” there are check marks presumably indicating the nature of the repair to the related part of the vehicle. Although there was testimony that the vehicle was in fact repaired, there was no evidence that the plaintiff was billed the amounts specified on the document or that the plaintiff paid any of those amounts. Indeed, there was no evidence that plaintiff paid any amount for repair of the vehicle.
CPLR 4533-a, designated “prima facie proof of damages,” “creates a hearsay exception and self-proving method of authentication for itemized bills for services and repairs that do not exceed $2,000.” (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 4533-a, at 285.) “However, the rule does not preclude the submission of evidence of damages otherwise admissible under common-law and statutory rules.” (Travelers Indem. Co. v City of New York, 161 Misc 2d 477, 479 [Civ Ct, Kings County 1994].) Here, plaintiff offers the repair estimate under the business records exception to the hearsay rule, providing foundation testimony through witness Mathew Gliams, the representative of 55 Stan Operating Corp. During summation, defendants’ counsel made much of Mr. Gliams’ lack of personal knowledge concerning the preparation of the repair estimate. CPLR 4518 (a) on “business records” makes clear that “lack of personal knowledge * * * may be proved to affect [the document’s] weight but * * * shall not affect its admissibility.” Moreover, defendants’ counsel stated that he had no objection to acceptance of the document into evidence.
However, because there is no evidence that the repair estimate was the basis of any payment by plaintiff, the weight to be given to the document is a serious question. CPLR 4533-a (which, as noted, only applies to a bill or invoice in an amount not in excess of $2,000) requires that the document be “receipted or marked paid” and contain a “verified statement that no part of the payment received * * * will be refunded to the debtor.” “The requirement that the bill have been paid has been continued in order to discourage collusion between the plaintiff and his creditor. Payment of a bill has been held to dispel the suspicion that an exorbitant fee has been charged.” (McLaughlin, Admissibility of Professional and Repair Bills Under CPLR 4533-a, 15th Ann Report of NY Jud Conf, at 241, 243 [1970].) If actual payment is deemed necessary to support *767 the reliability of the document for purposes of an exception to the hearsay rule, it is at least significant to the document’s probative value that payment has not been made. The question is: Should lack of payment be determinative, particularly where, as here, the repairs have been made?
In a very early case, the First Department held that an estimate of repair costs cannot support an award for property damage when the repairs have in fact been made:
“There can be no doubt that if the repairs be not made, the estimates of persons having the capacity to make them are competent to prove the item, but when the repairs have been made the estimates become secondary and the proof of the expense must be given. There is no reason why this rule should be departed from in such a case as this. There do not appear to have been any extraordinary circumstances attending the repairs, whatever they were, which excuse the presentation of the proof mentioned, and as the estimate was placed at $2,000, it became an important, if not controlling, feature on the subject discussed. It may have exceeded the amount actually spent. There is no pretense that it was not sufficient for the purpose. The adjudications bearing upon the question intimate, if they do not affirm, the proposition that estimates are valueless when the repairs have been made, and therefore are susceptible of the better proof — indeed the certain proof of the expense incurred.” (Lafayette v Gaffney, 47 Hun 583, 585 [1st Dept 1888].)
This decision has been cited only twice in reported cases, most recently in 1903, but never for the particular point. (Moore v Metropolitan St. Ry. Co., 84 App Div 613, 618 [2d Dept 1903]; Lynch v Kluber, 20 Misc 601, 603 [App Term 1897].)
Over 100 years after Lafayette v Gaffney (supra), the Second Department suggested that an estimate of reasonable cost may be sufficient even when the repairs have been made. In Babbitt v Maraia (157 AD2d 691 [2d Dept 1990]), plaintiff sued for damage to his truck resulting from a collision. “At trial, the plaintiff, who has been in the business of auto body repair for 30 years, testified that the cost of repairs, some of which were done by him and some by independent contractors, was approximately $6,000. Contrary to the defendant’s contention, this testimony was sufficient to establish the reasonable cost of repairs.” (Id., at 691-692 [emphasis added].) The Second *768 Department’s approach could be considered consistent with Lafayette v Gaffney, in that a plaintiff who is in the auto body repair business can provide the “extraordinary circumstances” that the earlier case would allow to “excuse” reliance on an estimate. In any event, the exception establishes that Lafayette v Gaffney applied a rule of proof rather than a rule of substance.
As will appear, I am adopting the approach suggested by the Second Department. Although not determinative in my thinking, I believe that a fact finder in 2001 may well be better able to assess damage and repair to an automobile than a fact finder in 1888 could evaluate a repair estimate for a canal boat. I am not suggesting that we have different damage rules for different goods, but merely that the ability to assign probative value might be greater when the fact finder is dealing with evidence with which she is familiar in everyday personal and business affairs.
It is important to remember that “[ejvidence as to cost of repair [s] is but an alternative method of proving depreciation in value.” (Johnson v Scholtz, 276 App Div 163, 166 [2d Dept 1949, Nolan, J., concurring].) This is not a case in which the nature of the loss is purely economic, where payment may be necessary to prove both the fact of injury and the amount of damages. Here, the nature, of the loss is physical, and the fact of the injury is undisputed. The question is the amount that will compensate the plaintiff for the loss. Reasonable cost of repair is not devoid of all probative force in establishing depreciation in value solely because the amount proved was not actually paid, even when repairs were made without the necessity of payment. (Babbitt, supra.)
Treating lack of payment as only one factor in assessing the probative value of a plaintiff’s repair estimate would allow a recovery to a plaintiff who can provide an explanation that would outweigh any negative inference arising from lack of payment. Any risk of overcompensating the plaintiff appears minimized by the damage formula’s limitation on recovery to an amount no greater than the diminution in market value resulting from the injury and no greater than the value of the property prior to the injury. (Supra.) Defendant, of course, may elicit testimony or introduce evidence of value pre- and postinjury, or directly challenge the “reasonableness” of the plaintiffs estimate.
In this case, lack of payment and the sponsoring witness’ lack of personal knowledge as to the damage to plaintiff’s vehi *769 ele or preparation of the repair estimate make plaintiffs grasp on sufficiency tenuous. However, the witness did testify as to the repair facility’s usual method in preparing estimates, specifically, in following the industry practice of relying on Ford’s “crash book” of suggested costs for parts and labor. (See, generally, Prince, Richardson on Evidence § 4-601 [Farrell 11th ed].) Other evidence suggests the reasonableness of the estimated charges and helps dispel concerns about overcompensating the plaintiff. This is a late model, full-size sedan, and plaintiffs driver testified that it showed no damage prior to the collision. The repair estimate describes repairs that imply significant physical damage.
In the absence of any evidence challenging plaintiffs proof on the extent of the damage, the reasonableness of the charges specified in the repair estimate, or the pre- and postcollision value of the vehicle, I am accepting the repair estimate as sufficient to establish the reasonable cost of repairs. However, since there is no evidence that plaintiff paid any of the charges specified, I can see no basis on which to include the amount listed for sales tax as part of the plaintiffs damages.
Plaintiff is awarded judgment in the amount of $2,615.87, representing the pretax estimate of repair of $3,269.84, discounted to reflect the comparative fault of the plaintiffs driver. Plaintiff is also awarded interest and costs, with interest computed from May 9, 1999, the date of the collision. (CPLR 5001; PJI3d 2:313.)